No. 59,132

RODNEY A. MOORE, next of kin of KATHLEEN A. GRUBB, Deceased, and Administrator of the Estate of KATHLEEN A. GRUBB, Deceased, *Appellant*, v. THE STATE BANK OF BURDEN, A Kansas Banking Corporation; WAYNE E. TEMPLE and RUBY M. TEMPLE; both Individuals, *Appellees*.

(729 P.2d 1205)

Opinion filed December 5, 1986.

*Steven L. Cranford,* of Wichita, argued the cause and *P. David Egan,* of Wichita, was with him on the briefs for appellant.

*Steven D. Gough,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause and *Linda S. Parks,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: Rodney A. Moore, administrator of the estate of Kathleen A. Grubb, appeals from an order of summary judgment granted in favor of the defendants, The Kansas State Bank of Burden (Bank), Wayne E. Temple, and Ruby M. Temple, in an action based upon an alleged illegal setoff of funds by the Bank.

On August 10, 1983, Kathleen A. Grubb filed a petition naming the Bank and Wayne E. Temple, its president, as defendants. She contended that the Bank had illegally declared a setoff against certain Social Security funds in the amount of $504.00 transmitted to the Bank for credit to the account of Mrs. Grubb. At the time of the setoff she was in default upon an automobile loan owed the Bank in the amount of $358.78 plus interest. The amount set off by the Bank from the funds of Mrs. Grubb was $447.18, which included interest to the date of setoff. The original petition asserted three causes of action based upon fraud, conversion, and the tort of outrage.

Thereafter, on November 4, 1983, Mrs. Grubb filed an action, based upon the same factual allegations, in the United States District Court for the District of Kansas, against the same two defendants and Ruby M. Temple, who was also an officer of the Bank. Subsequently, a first amended complaint was filed in the

federal court action by Rodney A. Moore, in his alleged representative capacity, asserting causes of action based upon fraud, conversion, outrage, invasion of privacy; and violations of the Kansas Uniform Commercial Code, the Kansas Uniform Consumer Credit Code, the Kansas Consumer Protection Act, the federal Social Security Act, the federal Electronic Funds Transfer Act, and the Racketeer Influenced and Corrupt Organizations Act. In each case the plaintiff sought damages of nearly $1,400,000.00.

Mrs. Grubb died December 15, 1983, and thereafter this action appears to have been carried on by Rodney A. Moore as "next of kin of Kathleen A. Grubb, Deceased, and Administrator of the Estate of Kathleen A. Grubb, Deceased" although the record does not reflect that he was ever properly substituted as the party plaintiff or that there was any attempt to comply with the provisions of K.S.A. 60-225 and 60-269. On January 28, 1985, a pretrial questionnaire was filed in the Cowley County District Court action in which the appellant stated, "If this action is ultimately prosecuted [in the Cowley District Court], amendments to the pleadings will be made to conform to the Complaint filed in U.S. District Court, copy attached." The record before us does not reflect that any amended petition was ever filed or that Ruby M. Temple was ever made a party defendant in this action. However, the trial court and the parties appear to have proceeded upon all the various theories asserted in the federal court action. It was agreed by the parties that discovery would be pursued in the federal court action and that all such discovery would also be utilized in the state court action. Following completion of the federal court discovery, the defendants moved for summary judgment in this case while Rodney A. Moore moved to have the action dismissed without prejudice.

The trial court, in its memorandum opinion, greatly condensed the facts, stating:

"In April, 1978, the State Bank of Burden made a loan to Kathleen A. Grubb. At this same time, Ms. Grubb opened a checking account with the bank. Ms. Grubb received Veteran Administration and Social Security benefits on a monthly basis. She signed authorizations for both agencies to make direct deposits of these funds to her checking account with the Burden bank. Apparently there is no record of these ever being affirmatively revoked.

"In July, 1979, Ms. Grubb was extended another loan by the bank for the purchase of a car. Later, in July 1981, this car was involved in an accident. Ms.

Grubb had failed to maintain insurance coverage to cover the loan. In approximately September, 1981, Ms. Grubb defaulted on the outstanding note. At that time there was $358.78 principal balance remaining. It is disputed if notice of default was given to the debtor. There followed a period of time that the checking account was not used.

"In July, 1983, the bank received, through its ordinary course of business, a wire transfer of $252.00 to be applied to Ms. Grubb's account. The source of the transfer was the Social Security Administration. In August the bank received another such transfer. These were credited to Ms. Grubb's old checking account.

"Although not indicated as such on any document, the original Social Security funds were widow's benefits for the support of a minor child, whereas the funds received in 1983 were benefits for Ms. Grubb's disability.

"No bank statement concerning this wire transfer was sent to Ms. Grubb in July, 1983. Ms. Grubb discovered where her July and August payments had been sent and contacted the bank by telephone demanding they be sent to her. She was advised by the bank's Vice President that it might exercise its right of set-off. (K.S.A. 9-1206.)

"The next day, August 5, 1983, Ms. Grubb's attorney again made demand for the money. The bank conferred with its attorney and was advised it could legally exercise the set-off. On August 8 or 9, the bank set-off $447.18 and sent a statement to Ms. Grubb reflecting that transaction. On August 31, 1983, statements for July and August were sent to plaintiff."

The court then granted the defendant's motion for summary judgment on the tort claims of the plaintiff based upon conversion, invasion of privacy, outrageous conduct, and fraud, and also as to plaintiff's claim for punitive damages. The plaintiff's motion to dismiss the action without prejudice as to the claims based upon alleged violations of the Kansas Uniform Commercial Code, the Kansas Consumer Protection Act, the Social Security Act, the Electronic Funds Transfer Act, the Racketeer Influenced and Corrupt Organizations Act, and the Kansas Uniform Consumer Credit Code was sustained. Rodney A. Moore has appealed the granting of partial summary judgment on behalf of the defendants.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Peoples Nat'l Bank & Trust v. Excel Corp.*, 236 Kan. 687, 695, 695 P.2d 444 (1985). The benefit of all inferences which may be drawn from the admitted facts must be given to the party against whom judgment is sought. *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 390, 710 P.2d 1297 (1985). When summary judgment is challenged on

appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶ 4, 662 P.2d 1203 (1983).

In the case at bar the record indicates both parties responded to a pretrial questionnaire in the case. In addition, the defendants' memorandum in support of their motion for summary judgment sets out extensive uncontroverted facts. In appellant's response to the motion for summary judgment, he disagreed over several details but substantially agreed with the material facts as propounded by the defendants. Thus, while some facts remain controverted, the material facts essential to resolution of this case appear settled, and the only issue before this court is whether summary judgment was proper.

The first cause of action on which the trial court entered summary judgment in favor of the defendants was that for conversion. This court has defined conversion as the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights. *Carmichael v. Halstead Nursing Center, Ltd.*, 237 Kan. 495, Syl. ¶ 2, 701 P.2d 934 (1985). Generally, an action for conversion will not lie for the recovery of an ordinary debt or account. *Temmen v. Kent-Brown Chev. Co.*, 227 Kan. 45, Syl. ¶ 3, 605 P.2d 95 (1980). It is well recognized that the relationship between a general depositor and his or her bank is that of creditor and debtor, and money deposited, unless segregated into a special account and designated to be kept separate, becomes the property of the bank. *Chilson v. Capital Bank of Miami*, 237 Kan. 442, 444, 701 P.2d 903 (1985). Therefore, unless intended to remain separate, money deposited in a bank ordinarily cannot be the subject of an action for conversion. *E.g., Baker, Administrator v. Brial*, 185 Kan. 322, 341 P.2d 987 (1959); Annot., 44 A.L.R.2d 927 § 7(c), p. 943.

One of the facts in dispute was whether Mrs. Grubb had closed her checking account in 1981 following her dispute with the Bank over further payment on her wrecked automobile. When the Bank received, in July and August 1983, an electronic transfer of funds from the Social Security Administration for credit to Mrs. Grubb, the Bank credited her checking account, which had been inactive since 1981 and which had evidently

carried a zero balance since that time. The Bank contended the account had never been actually closed by Mrs. Grubb. We find the issue of whether or not the account was closed in 1981 to be immaterial to a determination of the issues here. If the account remained open and the funds were credited to it, as the Bank contends, then a creditor-debtor relationship was created at that time. By the same token, even if the account was closed, when the Bank received the electronic transfer of funds from Social Security, the same relationship arose. The Bank was credited with funds for Mrs. Grubb, a former depositor, and the relationship of creditor and debtor again prevailed. It appears to be the contention of appellant that as the account of Mrs. Grubb was closed and as the Social Security payments are exempt from setoff, the Bank converted those funds when it did not forthwith transfer them to Mrs. Grubb.

We do not deem it necessary under the facts of this case to determine whether Social Security funds deposited with a bank are exempt under 42 U.S.C. § 407 (1982) from a setoff by the Bank in reliance upon K.S.A. 9-1206. Assuming, arguendo, that such funds are not subject to setoff, the erroneous application of the funds to the past-due debt owed the Bank does not constitute conversion under the facts of this case. Upon receipt of the notification from Social Security, the debtor-creditor relationship was created between the Bank and Mrs. Grubb and, as previously pointed out, the failure of the debtor to pay over such funds to the creditor does not ordinarily constitute conversion. While in certain instances there may be a conversion of commercial paper, *Carmichael v. Halstead Nursing Center, Ltd.,* 237 Kan. 495, Syl. ¶ 3, or conversion of funds in a depositor's account if the bank knows the funds are the property of a third party, *Iola State Bank v. Bolan,* 235 Kan. 175, Syl. ¶ 8, 679 P.2d 720 (1984), those situations are not applicable to the present case. Here, the Bank did not receive checks from Social Security payable to Mrs. Grubb which it converted to its own use, nor did the funds belong to a third party. We conclude that the trial court was correct in its determination that a debtor-creditor relationship existed between the Bank and Mrs. Grubb and that the proper action was one in contract rather than conversion.

Next, appellant asserts error in the trial court's determination

that there were no facts supporting a claim based upon the tort of outrage.

It has been recognized in Kansas that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another may be liable for such emotional distress based upon what has come to be referred to as the tort of outrage. *Neufeldt v. L. R. Foy Const. Co.*, 236 Kan. 664, Syl. ¶ 2, 693 P.2d 1194 (1985); *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, Syl. ¶ 1, 529 P.2d 104 (1974). To establish such a cause of action, proof of four elements is required: (1) The conduct of the defendant must be intentional or in reckless disregard of the plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress must be extreme and severe. *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, Syl. ¶ 3, 662 P.2d 1214 (1983). Conduct sufficient to support an action for outrageous conduct must be beyond the bounds of decency and utterly intolerable in a civilized society. *Neufeldt v. L. R. Foy Const. Co.*, 236 Kan. at 669. Liability for extreme emotional distress has two threshold requirements which must be met and which the court must, in the first instance, determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it. *Roberts v. Saylor*, 230 Kan. 289, Syl. ¶ 2, 637 P.2d 1175 (1981). Here, while there was some testimony by Mrs. Grubb in her deposition to the effect she was physically and mentally upset by the Bank's declared setoff of funds, there is no evidence to support any finding of outrageous conduct on the part of the officials of the Bank. The most that can be said is that the Bank may have made an erroneous setoff of the Social Security funds against a legitimate indebtedness owed to the Bank. Such action was done only after consultation with counsel and without any showing of any intent to injure Mrs. Grubb, or a reckless disregard of her. The trial court was correct in granting summary judgment on this issue.

Appellant's third claim is that the trial court erred in granting summary judgment upon the claim of fraud.

The broad outlines of fraud are said to include any cunning, deception, or artifice used, in violation of legal or equitable duty, to circumvent, cheat, or deceive another. The forms it may assume and the means by which it may be practiced are as multifarious as human ingenuity can devise, and the courts consider it unwise or impossible to formulate an exact, definite, and all-inclusive definition of the action. It is synonymous with, or closely allied to, other terms indicating positive and intentional wrongdoing, but is distinguishable from mistake and negligence. *Citizens State Bank v. Gilmore*, 226 Kan. 662, Syl. ¶ 2, 603 P.2d 605 (1979). Actual fraud is an intentional fraud, and the intent to deceive is an essential element of the action. Constructive fraud, however, is a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty of purpose or intent to deceive is necessary. *Andres v. Claassen*, 238 Kan. 732, Syl. ¶ 2, 714 P.2d 963 (1986). A suppression or concealment of the truth is not at all times such fraud or deceit as will be relieved against. *DuShane v. Union Nat'l Bank*, 223 Kan. 755, 760, 576 P.2d 674 (1978). There must be a concealment of facts which the party is under a legal or equitable duty to communicate and in respect of which he could not be innocently silent. *DuShane v. Union Nat'l Bank*, 223 Kan. at 759.

Here, the Bank in July 1983 received a notification of the electronic transfer of $252.00 from the Social Security Administration for the benefit or account of Mrs. Grubb. Appellant's principal argument seems to be that the failure to notify Mrs. Grubb of the receipt of the first funds in July 1983 and the failure to mail her a bank statement that month constituted fraud by concealment. Testimony of the Bank's employees was to the effect they thought the transfer had been made in error because no previous funds had been received since 1981. They fully expected to receive a notification that the transaction was being reversed and, as a result, failed to immediately notify Mrs. Grubb. They then simply forgot about it until a similar notification was received in August 1983 for an additional $252.00. The Bank officers then checked into the matter, found the outstanding past-due note of Mrs. Grubb, and notified her they would set off the debt against the funds received. Such a determination was

made only after consultation with legal counsel, who advised they had the right to declare such a setoff. It appears from the record that within a matter of a few days after declaring the setoff, officials of the Bank offered to pay over the entire $504.00 if Mrs. Grubb would return the loan papers which had been marked paid and mailed to her when the setoff was declared. Evidently this offer was refused by Mrs. Grubb or her legal counsel. It is argued that the Bank intentionally withheld mailing a July statement which would show receipt of $252.00 in order to receive the August Social Security payment which would result in the Bank having sufficient funds on hand to pay the entire indebtedness of Mrs. Grubb. The problem with this argument is there is absolutely no evidence to support it. It is based solely upon conjecture and speculation that the Bank intended to defraud Mrs. Grubb while all the evidence is to the contrary. The very most that can be made of the Bank's actions is that its employees made a mistake and were possibly negligent in doing so. Under the evidence as disclosed by the record here, the failure to mail a July 1983 bank statement falls far short of a fraudulent failure to disclose that information to Mrs. Grubb. The other arguments relative to the claim of fraud have been carefully considered and are equally without merit. No error on the claim for fraud is shown.

Next, it is contended that the court erred in granting summary judgment on the issue of a claim for punitive damages. It is well settled that punitive damages are imposed to punish a wrong-doer for malicious, vindictive, or willful and wanton invasion of the plaintiff's rights with the purpose being to restrain and deter others from the commission of like wrongs. *McDermott v. Kansas Public Serv. Co.*, 238 Kan. 462, Syl. ¶ 1, 712 P.2d 1199 (1986). An award of punitive damages, which generally requires an award of actual damages, is not designed to compensate the plaintiff for the wrong. *McDermott v. Kansas Public Serv. Co.*, 238 Kan. at 464. No one has the right to maintain a civil action for the mere purpose of inflicting punishment upon a wrongdoer, and if a party has no cause of action independent of his claim for punitive damages, he has no cause of action at all. *Sondegard v. Martin*, 83 Kan. 275, 277, 111 Pac. 442 (1910). Having determined that the court was correct in its rulings on the tort claims asserted as a basis for recovery, it follows that there is no independent cause of action for punitive damages.

The final issue raised is the claim that the procedure followed by the trial court in entering summary judgment was improper. This issue is based on the fact that the trial court, at the time it granted summary judgment for the defendants, apparently did not have copies of the discovery depositions to review. The depositions had been taken in the federal court action and evidently neither party saw fit to have copies of the depositions filed in this action until after the decision of the trial court. The trial court's original decision was filed June 12, 1985. The record reflects a motion for reconsideration, pointing out the lack of depositions and other issues, was filed and heard on June 13, 1985. The federal court depositions were then filed with the trial court on June 28, 1985. On July 31, 1985, the trial court's decision on the motion for reconsideration was filed in which an earlier ruling pertaining to one of the federal court claims was changed, but the prior summary judgment rulings were affirmed. On August 9, 1985, a motion to vacate the prior orders was filed in which the issue relating to the availability of the federal court depositions was again asserted. This motion was overruled in a written decision filed January 15, 1986. The court addressed the state of the record in detail and specifically pointed out that the depositions were part of the record. It is noted the copies of the depositions had been part of the record for over a month prior to the ruling on the first motion to reconsider the decisions of June 12, 1985. The depositions are also part of the record in this appeal.

In the case at bar appellant relies heavily on *Timmermeyer v. Brack*, 196 Kan. 481, 412 P.2d 984 (1966), in support of his position. In *Timmermeyer* the trial court entered summary judgment on a claim based largely on counsel's description of how his various witnesses would testify. This court reversed the trial court judgment, stating:

"The district court should not determine factual issues on considering the propriety of a summary judgment, but should search the record for the purpose of determining whether a factual issue exists. Certainly whether a factual issue exists should not be determined from the statements of counsel, seeking summary judgment, as to what certain witnesses will testify to when the testimony is not of record.

"The record discloses there are material facts to present which leaves remaining a genuine issue of a material fact. Summary judgment was, therefore, erroneously entered." 196 Kan. at 484.

In the present case, unlike *Timmermeyer*, it appears that the record, as it existed at the time summary judgment was entered, indicated there were no significant material issues of fact which remained controverted. The litigants had each filed responses to pretrial questionnaires and legal memorandums outlining the factual situation and law as it pertained to summary judgment. In these memorandums all parties made reference to the depositions that are now complained of as not being included in the record. While certain facts remained controverted, none of those were material to the ultimate determination of the claims being asserted against the Bank. We conclude that the trial court correctly entered summary judgment in this case based on the uncontroverted material facts and the existing law, regardless of the absence of the discovery depositions in the record. Any error which may have resulted from the failure of the trial court to have copies of the depositions at the time of its first ruling is harmless at best. See *City of Ottawa v. Heathman*, 236 Kan. 417, 426, 690 P.2d 1375 (1984).

The judgment is affirmed.