Victor OKOYE, Plaintiff,

v.

**MEDICALODGE NORTH** and Cindy Frakes, Defendants.

No. 98–2074–JWL.

United States District Court, D. Kansas.

Feb. 11, 1999.

Vincent M. Ekeh, Kansas City, KS, for Victor Okoye, plaintiff.

Patrick E. McGrath, Glenn S. Grayson, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, Garen L. Cox, Medicalodges, Inc., Coffeyville, KS, for defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff filed suit against defendants alleging violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983, breach of contract, breach of an implied covenant of good faith and fair dealing and intentional infliction of emotional distress. This matter is presently before the court on defendants' motion for summary judgment (doc. # 19). For the reasons set forth below, defendants' motion is granted and plaintiff's complaint is dismissed in its entirety.[1]

## I. Facts[2]

Plaintiff Victor Okoye began his employment with Kansas City Post Acute Care Center (the "Center")[3] as a licensed prac-

---

**1.** In his response to defendants' motion for summary judgment, plaintiff has expressly abandoned his claims for breach of contract and breach of an implied covenant of good faith and fair dealing. Accordingly, defendants' motion is granted with respect to these claims.

**2.** In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

**3.** The full name of the Center is Medicalodges of Kansas City, Inc., a/k/a Medicalodge North, d/b/a Medicalodge Post Acute Care Center.

tical nurse in November 1994. The Center provides care for individuals recovering from acute illness or injury and individuals in need of long- or short-term skilled nursing. Defendant Cindy Frakes is the Administrator of the Center.

On December 12, 1995, Nancy Mark, another nurse at the Center, reported to Ms. Frakes that plaintiff had mentally abused a patient two days earlier. The patient, who suffers from dementia, has a doll that the patient apparently believes is her living baby. Ms. Mark reported that plaintiff, in the patient's presence, had smashed the head of the doll, bent the head of the doll backwards and shook the doll. According to Ms. Mark's report, the patient started screaming and crying at plaintiff's actions. Upon receiving this report, Ms. Frakes suspended plaintiff pending an investigation of the incident. Hyacinth Hamilton, a certified nursing aide who purportedly witnessed the incident, confirmed that Ms. Mark's report was correct. Plaintiff, however, denied that the doll incident occurred and suggested that Ms. Mark and Ms. Hamilton fabricated the report.[4] In her affidavit, Ms. Frakes testified that she concluded, based upon her investigation, that the incident had occurred as described to her. Although the parties dispute the manner in which plaintiff's employment relationship with the Center ended, plaintiff did not return to work following his suspension.[5]

Ms. Frakes reported the doll incident to the Kansas State Board of Nursing (the "Board"). In January 1997, the Board filed a petition against plaintiff alleging unprofessional conduct and professional incompetency arising out of the doll incident. In April 1998, after a full hearing in which plaintiff was represented by counsel, a hearing officer for the Board issued an initial order in which the officer found that the allegations against plaintiff were supported by clear and convincing evidence and that plaintiff "committed an act of professional incompetency" as defined by the Kansas Nurse Practice Act, K.S.A. § 65–1113 et seq. The hearing officer, however, denied the Board's request to revoke plaintiff's nursing license and, instead, suspended plaintiff's license. The hearing officer further ordered that the suspension would be stayed provided that plaintiff complied with certain requirements including, *inter alia*, a requirement that plaintiff's future employers send quarterly reports to the Board's Nurse Practice Specialist concerning plaintiff's work performance. Moreover, the order provided that the Board would issue plaintiff a new license card bearing an "S" alert code.

On September 24, 1998, after review and a unanimous vote by a quorum of the Board, the hearing officer's initial order was adopted by the Board as its final order, with certain technical modifications regarding the requirements imposed upon plaintiff. Plaintiff asserts that he is in the process of seeking judicial review of the Board's decision.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is

---

4. Although plaintiff's papers are somewhat unclear, plaintiff apparently believes that Ms. Mark fabricated the incident based on an alleged discriminatory animus she harbored toward plaintiff. He believes that Ms. Hamilton fabricated the incident in retaliation for plaintiff's spurning her romantic advances.

5. Defendants assert that plaintiff's employment was terminated as a result of the doll incident. Plaintiff suggests that defendants accepted his "voluntarily resignation" after concluding that plaintiff had abandoned his job shortly after the incident occurred. The relevance, if any, of this distinction is not clear to the court. In any event, plaintiff has not supported his theory with competent Rule 56 evidence. He directs the court only to plaintiff's Exhibit 5—a document that plaintiff has failed to authenticate through a supporting affidavit or deposition from anyone with personal knowledge of the facts contained in the exhibit. See Fed.R.Civ.P. 56(c) & (e); D.Kan.Rule 56.1. Moreover, plaintiff specifically alleges in the pretrial order that defendants terminated his employment after the doll incident.

"no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Plaintiff's § 1981 Claim

Plaintiff claims that defendants terminated his employment based on his race in violation of 42 U.S.C. § 1981.[6] The court applies the same standards and burdens as applied in Title VII cases, *see Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 n. 3 (10th Cir.1997), and, accordingly, analyzes plaintiff's claim under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the summary judgment context, plaintiff initially must raise a genuine issue of material fact on each element of his prima facie case of discrimination. *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995).

Once plaintiff establishes his prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *EEOC v. Flasher Co.*, 986 F.2d 1312, 1317–19 (10th Cir.1992)). If the defendant comes forward with a nondiscriminatory reason for its actions,

---

**6.** In his papers, plaintiff also alleges that he was denied permission to attend a company seminar on the basis of his race. Plaintiff has failed to support this allegation with any evidence whatsoever. Plaintiff has not directed the court to any evidence in the record and the court has found no such evidence in the record submitted to it. Defendants' motion is granted on plaintiff's § 1981 claim to the extent it is based on defendants' purported refusal to allow plaintiff to attend a seminar.

the burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir.1994)). If the plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.*

■ The parties dispute whether plaintiff has established a prima facie case of race discrimination. The court assumes, without deciding, that plaintiff has established his prima facie case. Nonetheless, as set forth below, the court concludes that plaintiff has failed to meet his burden of showing the existence of a genuine dispute of material fact as to whether defendants' articulated reason for plaintiff's discharge—Ms. Frakes' conclusion that plaintiff had mentally abused a patient—is pretextual.[7]

In support of his pretext argument, plaintiff argues that his performance prior to December 10, 1995 was satisfactory. He states that he received a 5% raise in November 1995, that he received notes of appreciation for his good work from his immediate supervisor, and that he never received a negative performance evaluation.[8] Defendants' proffered reason for discharging plaintiff, however, is that plaintiff mentally abused a patient on December 10, 1995—a reason wholly unrelated to plaintiff's performance prior to that time. Thus, the mere fact that plaintiff's performance may have been satisfactory prior to December 10, 1995 does not demonstrate that defendants' proffered reason for discharging plaintiff is pretextual or unworthy of belief. In other words, plaintiff's performance prior to December 10, 1995 would be relevant to the pretext analysis only if defendants had relied on plaintiff's prior performance as a basis for the discharge decision. Defendants have not suggested that plaintiff's performance factored into the employment decision.[9] Thus, the court disregards plaintiff's efforts to refute defendants' proffered, non-discriminatory reason with facts relating to his prior performance.

The only other evidence that the court has uncovered with respect to plaintiff's § 1981 claim is an excerpt from plaintiff's deposition in which he states that his immediate supervisor told him that she believed "Nancy Mark was prejudiced against black people." Ms. Mark, of course, is the woman who reported plaintiff to Ms. Frakes. Although this testimony may support plaintiff's theory that Ms. Mark fabricated the doll incident because she bore a discriminatory animus toward plaintiff, the evidence does not support an inference that defendants' proffered reason for discharging plaintiff is pretextual. Even if Ms. Mark falsely accused plaintiff of misconduct because of a discriminatory animus she harbored toward him, this fact

7. Defendants move for summary judgment on plaintiff's § 1981 claim based on two additional grounds: (1) that § 1981 does not protect at-will employees who have been discharged from their employment; and (2) that plaintiff is precluded from asserting his claim based on principles of res judicata in light of the decision issued by the State Board of Nursing. Because the court has concluded that plaintiff's § 1981 claim fails on the merits, it declines to address defendants' alternative arguments.

8. Plaintiff has again failed to support these "facts" with competent Rule 56 evidence. The exhibits upon which he relies have not been authenticated through a supporting affidavit or deposition from anyone with personal knowledge of the facts contained in the exhibits. *See* Fed.R.Civ.P. 56(c) & (e); D.Kan.Rule 56.1. Although the court here has concluded that plaintiff's claims would fail in any event, such deficiencies are unacceptable from counsel admitted to practice in federal court and the court strongly advises plaintiff's counsel to familiarize himself with Rule 56 prior to filing papers with the court in the future.

9. Although defendants argue in their papers that plaintiff's performance prior to December 10, 1995 was unsatisfactory, they advance this argument only with respect to plaintiff's prima facie case (*i.e.*, in an effort to show that plaintiff was not qualified for his position for purposes of establishing his prima facie case).

does not address the relevant inquiry here—whether Cindy Frakes, the sole decisionmaker, believed the allegations and acted in good faith upon that belief in terminating plaintiff's employment. *See Jacobs v. Delta Air Lines, Inc.*, 156 F.3d 1243, 1998 WL 514620, at *3 (10th Cir. Aug.13, 1998) (challenging the veracity of allegations against plaintiff "avoids the relevant inquiry—i.e., whether Delta believed them, and acted in good faith upon that belief in terminating him"). Moreover, Ms. Frakes did not simply rely on Ms. Mark's report. She conducted an independent investigation of the incident. During this investigation, Hyacinth Hamilton, an eyewitness, confirmed that the incident had occurred. Although plaintiff believes that Ms. Hamilton fabricated the report as well, he believes that Ms. Hamilton was motivated to do so because plaintiff had rejected her romantic advances. Clearly, § 1981 does not protect individuals from motivations of this nature.

In sum, plaintiff has not come forward with sufficient evidence from which a reasonable factfinder could infer that defendants' proffered reason for discharging plaintiff is unworthy of belief or that plaintiff's race was a motivating factor in defendants' decision. Accordingly, the court grants defendants' motion for summary judgment on plaintiff's § 1981 claim.

## IV. Plaintiff's § 1983 Claim

■ Plaintiff also asserts a claim under 42 U.S.C. § 1983 against both defendants for defendants' alleged conspiracy with the State Board of Nursing to deprive plaintiff of his "right to work and earn a living." In support of his claim, plaintiff alleges that Ms. Frakes "had mentioned to other workers not to worry about the outcome of the Board of Nursing investigation because she knows the people involved with the investigation." Plaintiff further alleges that Rex Beasley, assistant attorney general acting as disciplinary counsel to the State Board of Nursing, had advised plaintiff that he would "make sure that

[plaintiff] will have no penny [sic] nor be able to earn any by the end of these matters." According to plaintiff, a trier of fact could infer a conspiracy from these two statements. As set forth below, the court disagrees.

■ As the Supreme Court recently reiterated, § 1983 "basically seeks 'to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights' and to provide related relief." *Richardson v. McKnight*, 521 U.S. 399, 117 S.Ct. 2100, 2103, 138 L.Ed.2d 540 (1997) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–257, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978))). It imposes liability only where a person acts "under color" of a state "statute, ordinance, regulation, custom, or usage." *Id.* (quoting 42 U.S.C. § 1983). Nonetheless, § 1983 can sometimes impose liability upon a private individual or entity. *Id.* (citing *Wyatt*, 504 U.S. at 162, 112 S.Ct. 1827; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

■ It is uncontroverted that both defendant Medicalodge and defendant Frakes are private actors for purposes of analyzing plaintiff's § 1983 claim. In order to hold a private actor liable under § 1983, "it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State." *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir.1996) (quoting *Lee v. Town of Estes Park*, 820 F.2d 1112, 1114 (10th Cir. 1987)). No such showing has been made here. Plaintiff's allegations of a conspiracy between defendants and the State Board of Nursing suggest that he is relying on the "joint action" test to establish defendants' liability under § 1983. *See Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct.

1598, 26 L.Ed.2d 142 (1970). Under this test, a § 1983 claim may arise when a private actor conspires with a state actor to deprive a person of constitutional rights under color of state law. *See Dixon v. City of Lawton,* 898 F.2d 1443, 1449 n. 6 (10th Cir.1990) (citing *Dennis,* 449 U.S. at 29, 101 S.Ct. 183; *Adickes,* 398 U.S. at 149–52, 90 S.Ct. 1598). In analyzing defendants' motion for summary judgment on this claim, the court examines "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *See Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1453 (10th Cir.1995).

Plaintiff here has not alleged facts from which a reasonable jury could conclude that the decision by the State Board of Nursing to encumber plaintiff's license resulted from any concerted action between defendants and the Board. Rather, the record indicates that a hearing officer for the Board, after a full hearing in which plaintiff was represented by counsel, made an independent decision to place certain restrictions on plaintiff's nursing license. This decision was then reviewed and adopted by a quorum of the full Board. Ms. Frakes' statement to other workers about the outcome of the Board's investigation is simply not sufficient to show that she and the Board shared "a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action" or that a "substantial degree of cooperative action" existed between her and the Board. *See Gallagher,* 49 F.3d at 1454–55.[10] Moreover, Mr. Beasley's alleged statement to plaintiff simply does not reflect any action on the part of defendants. Finally, the mere fact that Ms. Frakes reported plaintiff's conduct to the Board is insufficient to constitute the requisite "joint action" for purposes of establishing Ms. Frakes' liability under § 1983. *See id.* at 1545 (private citizens who make

complaints to police officers that result in arrests are not state actors) (citing *Carey v. Continental Airlines, Inc.,* 823 F.2d 1402 (10th Cir.1987); *Lee v. Town of Estes Park,* 820 F.2d 1112 (10th Cir.1987)).

In short, there is no evidence in the record from which a reasonable jury could conclude that defendants and the State Board of Nursing jointly participated in the decision to place certain restrictions on plaintiff's nursing license. Plaintiff's conspiracy allegations, conclusory at best, are insufficient to survive defendants' motion for summary judgment. *See Gallagher,* 49 F.3d at 1456 (affirming grant of summary judgment where evidence was insufficient to establish joint action between state and private entities); *Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir.1989) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."). Accordingly, defendants' motion is granted with respect to plaintiff's § 1983 claim and this claim is dismissed in its entirety.

## V. Plaintiff's Claim for Intentional Infliction of Emotional Distress

■ Finally, plaintiff claims that the conduct of defendants constitutes the intentional infliction of emotional distress. In support of his claim, plaintiff alleges that defendants' conduct (presumably, reporting the doll incident to the State Board of Nursing) caused plaintiff's nursing license to be encumbered which, in turn, deprived plaintiff of his ability to work. Plaintiff further alleges that he incurred "great legal expenses defending the false allegations." As set forth below, plaintiff has not set forth sufficient evidence from which a reasonable jury could conclude that defendants intentionally inflicted emotional distress upon plaintiff. Thus, summary judgment in favor of defendants is appropriate on plaintiff's intentional infliction of emotional distress claim.

---

10. In any event, this purported statement by Ms. Frakes is unsupported by any evidence. Plaintiff simply offers the statement in his papers without citation to the record. More-

over, the court has reviewed the handful of exhibits attached to plaintiff's papers and has been unable to find support for the statement.

As this court has previously noted, Kansas has set a very high standard for the common law tort of intentional infliction of emotional distress or, as it is sometimes referred to, the tort of outrage. *Butler v. City of Prairie Village,* 974 F.Supp. 1386, 1406 (D.Kan.1997). Moreover, "Kansas courts have been reluctant to extend the outrage cause of action to discrimination and harassment claims." *Bolden v. PRC Inc.,* 43 F.3d 545, 554 (10th Cir.1994). To establish a prima facie case of intentional infliction of emotional distress, plaintiff must show that (1) defendant's conduct was intentional or in reckless disregard of plaintiff; (2) defendant's conduct was extreme and outrageous; (3) there is a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress is extreme and severe. *Id.* at 553 (citing *Moore v. State Bank of Burden,* 240 Kan. 382, 388, 729 P.2d 1205 (1986)); *Smith v. Welch,* 265 Kan. 868, 875 967 P.2d 727, 733 (1998). Under Kansas law, liability for emotional distress has two threshold requirements. To resolve a motion for summary judgment on an emotional distress claim, the court must determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it. *Penry v. Federal Home Loan Bank,* 155 F.3d 1257, 1264 (10th Cir.1998) (citing *Lindemuth v. Goodyear Tire & Rubber Co.,* 19 Kan. App.2d 95, 864 P.2d 744 (1993) (quoting *Roberts v. Saylor,* 230 Kan. 289, 292–93, 637 P.2d 1175 (1981))); *Welch,* 265 Kan. at 875, 967 P.2d at 733. Conduct is not extreme and outrageous unless it is regarded as being "beyond the bounds of decency and utterly intolerable in a civilized society." *Penry,* 155 F.3d at 1264 (citing *Moore v. State Bank of Burden,* 240 Kan. 382, 729 P.2d 1205 (1986)).

There is no evidence in the record that defendant Medicalodge North· or defendant Frakes engaged in any conduct in an effort to intentionally inflict emotional distress upon plaintiff. In fact, plaintiff states in his papers that defendants, by their actions, "intended to encumber plaintiff's· license." Although plaintiff vaguely suggests that Ms. Frakes lied to the State Board of Nursing by fabricating the doll incident, the record does not support this allegation. At most, the record indicates plaintiff's belief that Ms. Mark and Ms. Hamilton fabricated the doll incident. Even assuming Ms. Mark and Ms. Hamilton fabricated the incident as plaintiff believes, plaintiff has offered no facts suggesting that Ms. Frakes, the decisionmaker, knew (or should have known) the report was false or otherwise acted improperly. The record indicates only that Ms. Frakes acted in good faith upon her belief that the doll incident had occurred as reported to her. Finally, the record is devoid of any evidence suggesting that plaintiff in fact suffered emotional distress.

Under such circumstances, construing the facts in a light most favorable to plaintiff, the court concludes that plaintiff cannot maintain a claim for intentional infliction of emotional distress against defendants. Plaintiff has not alleged any conduct by defendants which was so outrageous in character or so extreme in degree as to be beyond the bounds of decency or to be regarded as atrocious and utterly intolerable in a civilized society. *Bolden,* 43 F.3d at 554 (citing *Roberts v. Saylor,* 230 Kan. 289, 293, 637 P.2d 1175 (1981)). Moreover, plaintiff has failed to set forth any facts with respect to his alleged emotional distress. Thus, the court grants defendants' motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for summary judgment (doc. # 19) is

granted and plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.