(88 P.3d 1250)

No. 89,365

FARM BUREAU MUTUAL INSURANCE COMPANY, INC., *Plaintiff/Appellant,* v. RICHARD A. CARMODY, OERKE FARMS, MARVIN OERKE, SHIRLEY OERKE, NORTHLAND INSURANCE COMAPNY, PATRICIA FOREHAND, PATRICIA FOREHAND as conservator of the Estate of Steven E. Forehand, and STEVEN E. FOREHAND, *Defendants,* and ROGER JOHNSON and HERSHEWE & GULICK, P.C., *Defendants/Appellees.*

Opinion filed May 7, 2004.

*Paul Hasty, Jr.* and *Merry M. Campbell-Tucker,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellant.

*Daniel F. Church, Byron A. Bowles,* and *G. Stuart Englebert,* of McAnany, Van Cleave & Phillips, P.A., of Roeland Park, for appellees Roger Johnson and Hershewe & Gulick, P.C.

Before JOHNSON, P.J., MARQUARDT and GREENE, JJ.

JOHNSON, J.: Farm Bureau Mutual Insurance Company, Inc. (Farm Bureau) appeals the summary judgment granted to defendants Johnson and Hershewe & Gulick, P.C. (hereafter collectively referred to as "Johnson"). Farm Bureau complains that the district court incorrectly ruled that it could not sue Johnson for conversion based upon Johnson's settling of his client's personal injury action against the tortfeasor and distributing the settlement proceeds without paying Farm Bureau's claimed lien for personal injury protection (PIP) benefits. Finding an action for conversion will not lie under the facts of this case, we affirm.

The underlying facts are largely undisputed. Marvin and Shirley Oerke operate Oerke Farms (collectively "Oerkes"); Richard A. Carmody was their employee. On June 10, 1999, Steven E. Forehand suffered severe, permanent, and disabling injuries in an automobile accident caused by the negligence of Carmody, who was driving a tractor-trailer rig within the scope of his employment with the Oerkes. The Oerkes were insured by Northland Insurance Company (Northland). Steven Forehand was insured by Farm Bureau.

Patricia Forehand is Steven's spouse, as well as his conservator. The Forehands retained Johnson to represent them in their personal injury claims. Johnson notified Farm Bureau that the Forehands had a claim for personal injury protection benefits. Farm Bureau paid the Forehands $7,942.80 for collision damage to their vehicle, $320 for car rental fees, and PIP benefits in the amount of $16,530.37. Apparently, the collision claim was paid prior to Johnson's employment. Farm Bureau never advised Johnson that it intended to make a PIP reimbursement claim against the Forehands and did not request that Johnson protect Farm Bureau's PIP lien.

On November 17, 1999, the Forehands filed a petition in Jackson County, Missouri, naming Carmody, the Oerkes, and the manufacturer of the Oerkes' trailer as defendants. In March 2000, Northland agreed to settle the case for $1 million. On March 3, 2000, the Missouri court entered a Judgment and Order, in which it refers to Carmody, the Oerkes, and Oerke Farms as "the Oerke defendants," and whereby it ordered, adjudged, and decreed:

"a. That the settlement of plaintiffs' claims and causes of action against the Oerke defendants only is hereby approved.

"b. That the proposed apportionment of the settlement proceeds of $250,000 to Patricia A. Forehand individually and as spouse of Steven E. Forehand and $750,000 to Patricia A. Forehand as Conservator of the Estate of Steven E. Forehand is fair and equitable under the circumstances and is approved.

"c. That Patricia A. Forehand, individually and as Conservator of the Estate of Steven E. Forehand, is ordered and directed to acknowledge receipt of the settlement proceeds in writing with this Court and to execute releases to the Oerke defendants releasing and discharging the Oerke defendants only from any and all

liability to Patricia A. Forehand and Steven E. Forehand on account of the occurrence of June 10, 1999.

"d. That Patricia A. Forehand is directed to reimburse her attorneys for litigation expenses in the amount of $25,000 and to pay said attorneys their contingent fee in the amount of $325,000.

"e. That Patricia A. Forehand is directed to file a copy of this Judgment and Order with the Probate Court of Crawford County, Kansas, and to deposit the net settlement proceeds paid to her as Conservator of the Estate of Steven E. Forehand as directed by the Probate Court of Crawford County, Kansas, subject to the further Orders of said Probate Court.

"f. That Patricia A. Forehand, through her attorney, is directed to file evidence with this Court that said filings have been made in the Probate Court of Crawford County, Kansas.

"g. That Patricia A. Forehand is directed to dismiss this lawsuit with prejudice against the Oerke defendants only with each party bearing their own costs."

Checks totaling $1 million were delivered to Johnson and deposited in the firm's client trust account. After the checks cleared, Johnson disbursed the settlement proceeds as directed by the court order. The court order made no provision for reimbursing Farm Bureau for its payments to its insured under either the Forehands' collision or PIP coverage. Apparently, Farm Bureau was unaware of the Missouri lawsuit, because it took no action to intervene to enforce its PIP lien.

Approximately a year after settlement, Farm Bureau's attorney demanded money from Johnson, threatening a lawsuit for conversion if he failed to comply with the demand. Johnson discussed the letter with the law firm, and the firm notified its insurance carrier of a threatened lawsuit.

In May 2001, Farm Bureau filed suit against Carmody, Oerke Farms, Johnson, his law firm, and Northland, claiming $24,793.17 to reimburse the monies it had paid for collision damage ($7,942.80), for rental car fees ($320), and for PIP benefits ($16,530.37). The petition was amended twice, the last of which named the following additional defendants: Marvin Oerke, Shirley Oerke, Patricia Forehand, Patricia Forehand as conservator of the Estate of Steven E. Forehand, and Steven E. Forehand. Farm Bureau alleged that all of the defendants were liable for conversion. Additionally, the petition appears to suggest a claim against Carmody, Oerkes, and Northland on a subrogated negligence theory.

In addition to suing its own insured for conversion, Farm Bureau alleged that the Forehands breached the insurance contract by failing to pay Farm Bureau's subrogation interest.

The trial court considered various summary judgment motions and found, *inter alia*, that: (1) Northland's settlement proceeds were duplicative of Farm Bureau's PIP benefit payments, entitling Farm Bureau to reimbursement; (2) Kansas law applied, notwithstanding the action was filed in Missouri; and (3) the mere failure to pay money cannot be the basis for the tort of conversion. The court granted the defendants' summary judgment on the conversion claims. Finding that the only claim against Johnson and his law firm was based on conversion, the court dismissed them from the lawsuit. Farm Bureau appealed this decision on August 1, 2002.

The litigation continued on the remaining issues, as evidenced by additions to the record on this appeal. At a November 12, 2002, hearing, the district court found that no dispute remained as to liability, causation, or damages and, accordingly, granted Farm Bureau summary judgment on its subrogation claims against Carmody, the Oerkes, and Northland for the amounts paid to the Forehands for collision damage ($7,942.80), rental fees ($320), and PIP benefits ($16,528.78). The court declared that Farm Bureau was entitled to prejudgment interest on the $24,793.17, at the rate of 10% from March 1, 2000. The court specified that its judgment did not resolve Farm Bureau's claims against the Forehands and directed Farm Bureau to advise whether it intended to pursue those claims.

The journal entry of the hearing was filed January 16, 2003. We do not know all of what transpired after the November 12 hearing, except that the record contains a January 27, 2003, letter from the Forehands' attorney to the clerk of the district court, which recited that the enclosed $31,941.10 check from Patricia A. Forehand represented full satisfaction of the judgment entered in the case, including interest. Apparently, Mrs. Forehand had some difficulty in getting her insurance company to accept one or more of her tendered checks because Farm Bureau demanded more interest. Eventually, Farm Bureau received $32,070.06 from its insured through the court clerk.

*MOOTNESS*

Johnson argues that because Farm Bureau has received all the monies it paid to its insured, together with interest thereon, its claims have been fully satisfied and this appeal is moot. Farm Bureau appears to make two arguments as to why its claims against Johnson are not moot: (1) Farm Bureau's damages arising from the tortfeasors' negligence are not the same as Farm Bureau's damages arising from Johnson's conversion; and (2) Farm Bureau still has the possibility of amending its petition to allege punitive damages.

Farm Bureau's first argument is absurd. In its petition, Farm Bureau's sole allegation of damages was for the $24,793.17 that it had paid to its insured, the Forehands. The fact that Farm Bureau claimed under the multiple theories of subrogated negligence, conversion, and breach of contract against different defendants does not effect a stacking of damages. Even if all of the defendants wronged Farm Bureau in all of the ways claimed, the actual damages suffered by Farm Bureau equal the amount it actually received.

In its second argument, Farm Bureau asserts that if the district court incorrectly dismissed its conversion claim against Johnson, upon remand Farm Bureau can move to amend its petition to include a claim for punitive damages. Farm Bureau filed a motion to amend to add a punitive damage claim. The district court overruled the motion because the punitive damage claim was limited to the conversion cause of action, which was dismissed. Therefore, effectively, the district court did not rule on the efficacy of Farm Bureau's claim for punitive damages. An appeal will not be dismissed for mootness unless it is clearly and convincingly shown that the actual controversy has ended and the only judgment that could be entered would be ineffectual for any purpose and an idle act insofar as rights involved in the case are concerned. *In re M.R.*, 272 Kan. 1335, 1339, 38 P.3d 694 (2002). Therefore, we are disinclined to embark upon an analysis of the law governing punitive damages to determine whether that claim is definitively precluded as a matter of law. Rather, we will give Farm Bureau the determination on the merits it seeks.

## CAUSE OF ACTION FOR CONVERSION

Farm Bureau briefs two issues on appeal:

"Did the trial court err in finding that defendants Johnson and Hershewe & Gulick, P.C. could not be held liable for conversion for knowingly concluding the claim of Steven Forehand and defendant Patricia Forehand by settling the claim, turning it into cash, depositing the proceeds of the claim, *i.e.*, the cash, into their trust account, and then disbursing the cash without payment of the known lien of plaintiff Farm Bureau Mutual Insurance Company, Inc.?"

and

"Did the trial court err in granting summary judgment to defendants Johnson and Hershewe & Gulick, P.C. when they knowingly concluded the claim of Steven Forehand and defendant Patricia Forehand by settling the claim, turning it into cash, depositing the proceeds of the claim, *i.e.*, the cash, into their trust account, and then disbursing the cash without payment of the known lien of plaintiff Farm Bureau Mutual Insurance Company, Inc.?"

A determination of whether summary judgment was appropriate will resolve both stated issues. Our standard of review for summary judgment is well settled. See *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002). Here, the question is whether an action for conversion could lie under undisputed facts.

Conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another. An action will not lie for conversion of a mere debt or chose in action. *Temmen v. Kent-Brown Chev. Co.*, 227 Kan. 45, 50, 605 P.2d 95 (1980). The district court found the nature of the "property" alleged to have been converted was not amenable to the tort of conversion. We agree with this finding but further determine that Farm Bureau did not possess a sufficient ownership interest in the settlement proceeds to permit it to sue for conversion.

### Nature of the Property

Farm Bureau appears to equivocate as to the property allegedly converted. In its petition and in portions of its appellate brief, Farm Bureau suggests that its statutory lien was converted. Elsewhere in its brief, Farm Bureau argues that "Johnson and Hershewe & Gulick, P.C. exercised the right of ownership over goods or personal

chattels, *i.e.*, cash money, belonging to another, *i.e.*, Plaintiff Farm Bureau, to the exclusion of the other's rights."

Apparently, Farm Bureau is not using the term "cash money" in its ordinary sense, *i.e.*, currency and/or coin. Northland issued checks, apparently payable to the victims and their attorneys. Those checks were not "cash money"; rather, they represented a "promise or order to pay a fixed amount of money on demand." See K.S.A. 84-3-104. Even Farm Bureau acknowledges that when the checks were deposited, a creditor/debtor relationship was created between the account holder and the bank. See *Moore v. State Bank of Burden*, 240 Kan. 382, 386, 729 P.2d 1205 (1986), *cert. denied* 482 U.S. 906 (1987). The record does not reflect when, if ever, the proceeds were converted into "cash money," but at all times relevant to this case the settlement proceeds were in the form of intangible property.

Farm Bureau argues that *Moore* is distinguishable because Farm Bureau had a valid, statutory lien which gave it "a right to immediate possession and reimbursement from the tort settlement proceeds." Curiously, Farm Bureau's better argument for distinguishing *Moore* is that, here, the settlement deposits were arguably kept separate rather than being commingled with other funds of the depositor. Nevertheless, we disagree with Farm Bureau's characterization of its "property."

First, Farm Bureau fails to distinguish between its claims for reimbursement of physical damage payments and its claim for PIP benefits payments. K.S.A. 40-3113a(b) provides, in part, that an "insurer . . . shall be subrogated to the extent of duplicative personal injury protection benefits provided to date of such recovery and shall have a lien therefor against such recovery and the insurer . . . may intervene in any action to protect and enforce such lien." Obviously, this lien does not apply to the $8,262.80 paid under Forehands' collision and rental car coverage.

With respect to the $16,530.37 in PIP benefits paid, the statute does not create an immediate ownership interest, as Farm Bureau asserts. If that were true, no purpose would be served by the statute's provision permitting an insurer to intervene "to protect and enforce such lien." K.S.A. 40-3113a(b). Additionally, the right of

subrogation is applied only to the extent that the PIP benefits are duplicative. We acknowledge Farm Bureau's argument that case law exists finding settlement proceeds duplicative as a matter of law. However, insurance carriers are permitted to, and often do, agree that the PIP benefits are not duplicative, especially in circumstances such as this, where the insured suffers severe, permanent, and disabling injuries which are arguably undercompensated by the tortfeasor's liability limits. Further, the same statute which grants the lien also contemplates that the insurer will pay a proportionate share of the attorney fees incurred to obtain the funds upon which the lien attaches. See K.S.A. 40-3113a(e). In short, until established by court order or agreement, Farm Bureau's statutory lien was an inchoate, intangible "property," the exact amount of which was unknown and which was not amenable to conversion.

*Ownership of Settlement Proceeds*

Northland issued its checks in conformity with a court order that established the owners of the proceeds to be Patricia A. Forehand, individually and as conservator of Steven E. Forehand's estate. The Missouri court ordered Patricia to: (1) acknowledge receipt of the settlement proceeds; (2) pay her attorneys for litigation expenses and contingency fees; and (3) deposit the conservatorship's net share of the settlement proceeds as directed by the Probate Court of Crawford County, Kansas. Johnson assisted his client in complying with the court order, utilizing his client trust account. The control Johnson exercised over the settlement proceeds was expressly authorized by the owners, Patricia A. Forehand and Steven E. Forehand's conservatorship. If Johnson had, *sua sponte*, disbursed part of the proceeds to Farm Bureau, he would have been in violation of a court order and, arguably, could have been accused of conversion by the owner of the settlement proceeds, the Forehands.

Thus, Farm Bureau's action for conversion of the settlement proceeds was correctly dismissed for the additional reason that the proceeds did not *belong* to the insurer. Rather, the insurer merely

had a claim against the proceeds, requiring it to take steps to enforce its interests.

### *Johnson's Duty to Farm Bureau*

Unquestionably, Farm Bureau's payments to its insureds created legal rights to seek reimbursement. Farm Bureau became subrogated to the Forehands' rights, permitting the insurer to sue the tortfeasors, asserting its insured's negligence claims. See, *e.g., Railroad Co. v. Neet,* 7 Kan. App. 495, Syl. ¶ 2, 54 Pac. 134 (1898). In fact, this is what occurred; Farm Bureau sued the tortfeasors, claiming negligence. Further, the insurer had a right of reimbursement from its insured under the policy contract. Again, this is what eventually occurred; the Forehands repaid their insurance company with interest. Farm Bureau is attempting to create a new method of enforcing its subrogation rights, *i.e.*, suing their insured's attorney for conversion.

Underlying this action is an apparent belief by Farm Bureau that Johnson owed a duty to his clients' insurance carrier to, *sua sponte* and gratuitously, effect enforcement of Farm Bureau's subrogation rights. We decline to manufacture such a duty. Indeed, such a duty would create an unacceptable conflict of interest. Johnson's mission was to obtain the maximum recovery possible for the Forehands, which might well have included an attempt to avoid the reimbursement of PIP benefits by asserting that the payments were not duplicative.

We do not intend to intimate that an insurer will never have a cause of action against its insured's attorney. If, as is common practice, the attorney, with the client's consent, agrees to protect the insurer's PIP lien for an agreed fee, a contract action will lie for a breach of that agreement. Similarly, if a plaintiff's attorney misrepresents a material fact in order to defeat an insurer's PIP lien, the carrier might well pursue a fraud action. However, we do intend to make it crystal clear that a personal injury plaintiff's attorney who fails to gratuitously effect the payment their client's insurer's PIP lien from settlement proceeds cannot be sued by the insurer on a theory of conversion.

Affirm.