**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 7 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THELMA HARRIS, Mother and Next
Friend of Ricky Alan Harris,

     Plaintiff-Appellant,

v.

VICKI ROBINSON and
INDEPENDENT SCHOOL DISTRICT
NO. 49 OF LEFLORE COUNTY,
OKLAHOMA,

     Defendants-Appellees.

No. 00-7136

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 00-CV-103-P)**

---

Submitted on the briefs:

Robert S. Blatt and Shannon L. Blatt, Fort Smith, Arkansas, and Pat Pate, Sr.,
Poteau, Oklahoma, for Plaintiff-Appellant.

Frederick J. Hegenbart and Jerry A. Richardson of Rosenstein, Fist & Ringold,
Tulsa, Oklahoma, for Defendants-Appellees.

---

Before **BRISCOE**, **McKAY**, and **HALL**[*], Circuit Judges.

---

     [*]The Honorable Cynthia Holcomb Hall, Senior United States Circuit Judge
for the Ninth Circuit, sitting by designation.

**McKAY**, Circuit Judge.

_____

Thelma Harris, mother and next friend of Ricky Alan Harris, brought this action pursuant to 42 U.S.C. § 1983 alleging a violation of Ricky's civil rights. Ms. Harris appeals the United States District Court Order granting summary judgment in favor of Vicki Robinson and the Independent School District No. 49 of LeFlore County, Oklahoma ("Wister School District").

We review a district court's grant of summary judgment *de novo*. Reynolds v. School Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1531 (10th Cir. 1995). A motion for summary judgment is granted when the record demonstrates that "there is no genuine issue of material fact . . . and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The issue is whether Ricky, a ten-year-old mild to moderately retarded boy, was deprived of his constitutional rights when his home room teacher, Ms. Robinson, made him clean out a toilet with his bare hands.

On January 10, 2000, Ms. Robinson followed some of her students out into the hall after the bell rang ending the class period. Ms. Robinson saw Ricky and two other boys go into the boys' bathroom and start laughing. When the boys came out, she asked what was going on. One of the boys told her that the toilet

was stopped up and that Ricky had said he did it. App. 72-77, 99-102.

Ms. Robinson took Ricky aside and asked him if he put paper in the toilet, and he said, "yes." Ms. Robinson asked if there was any reason why he had put so much paper in the toilet, and Ricky said, "no." Ms. Robinson then asked Ricky why he had done it, and he smiled and said, "I don't know." App. 65-71, 77-80.

Ricky testified in his deposition that when Ms. Robinson asked him if he meant to put the toilet paper in the toilet, "I think she didn't understand me because she probably thought that I said yes." App. 39. Ricky's father testified that he believes Ricky confessed to Ms. Robinson without meaning to, and that Ricky and Ms. Robinson were thinking two different things when she asked if he intentionally put paper in the toilet. App. 110.

Ricky testified that he had used that toilet earlier that day and that he had used a lot of paper to clean himself. He flushed the toilet, but he did not think that all the paper went down. App. 33-35.

Ms. Robinson did not know that Ricky had used the bathroom earlier and that he had apparently stopped up the toilet with paper he had used to clean himself. She thought he had intentionally clogged a clean toilet with paper. App. 82-84. Ms. Robinson told Ricky to go into the bathroom, get a trash can, and pull the paper out of the toilet. Ricky asked Ms. Robinson to call a janitor, but Ms. Robinson refused. Ricky was not provided with rubber gloves or a plunger. App.

-3-

39-40, 43-44. Ms. Robinson testified that she did not consider her action to be a disciplinary measure; she intended only for Ricky to clean up his own mess. App. 80-81.

Ricky pulled the paper out of the toilet with his bare hands. The paper had stains on it, but he did not see any feces. App. 43-44, 51. The entire incident lasted approximately five minutes. Ricky washed his hands and returned to class. Ms. Robinson asked Ricky if he had washed his hands with soap, and Ricky said that he thought so. Ms. Robinson sent Ricky back to wash his hands again with soap to make sure they were clean. App. 91-92. Ms. Robinson taught the class a lesson involving earthworms that afternoon, and Ricky appeared to enjoy handling the worms. He did not appear upset. App. 93-94, 100.

On the bus ride home, some boys called Ricky "plumber boy." App. 52. When Ricky got home that day, he told his mother that Ms. Robinson had made him clean out the toilet. He explained to his mother that when Ms. Robinson asked him if he intentionally plugged up the toilet with paper, he said that Ms. Robinson probably thought he said "yes" when he meant to say "no." App. 42, 49. Mrs. Harris called Carol Bentley, the school principal, who knew nothing about the incident. App. 52. Ms. Bentley met the following day with Ricky's parents and Jerry Carpenter, the Superintendent for the Wister School District. App. 52-53, 94-95, 109. At the meeting, Ms. Robinson apologized to Ricky's

parents for the incident. Ricky's parents told Mr. Carpenter that Ms. Robinson should resign or be fired. Mr. Carpenter said that was not going to happen but that Ms. Robinson would be reprimanded. App. 54, 95-97, 112.

Ms. Robinson received a formal, written admonishment dated January 12, 2000, reprimanding her for poor judgment. She was advised that if any other incident of a similar nature occurs, it could lead to her dismissal. App. 115.

Ricky did not return to the Wister School District after the incident on January 10, 2000. His parents now home-school both Ricky and his older brother. App. 32, 47-48, 58-59, 107-108.

In school discipline cases, the substantive due process inquiry is "whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Garcia by Garcia v. Miera, 817 F.2d 650, 655 (10th Cir. 1987) (quoting Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980)). In order "to satisfy the 'shock to conscience' standard, . . . the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995).

In Garcia, a nine-year-old girl was subjected to two excessive incidents of

corporal punishment so severe that we characterized them as "beatings." Garcia, 817 F.2d at 652. In the first beating, a teacher held the girl upside down by her ankles while the principal used a wooden paddle to strike her. The paddle was split in two pieces and when the paddle hit her, "it clapped [and] grabbed." Id. at 653. The girl's classroom teacher observed blood soaking through her clothing after the beating, and she was left with a permanent scar on her leg from a two-inch cut. Id. In the second beating, the girl was so severely bruised that her family sought medical treatment. The examining physician stated that he had never seen such severe bruising as the result of a routine spanking. The examining nurse stated that if a child had received an injury of this type at home she would have reported the parents for child abuse. Id.

In Garcia, we found that the injuries were so excessive and severe that they met "the [high] threshold for recovery on the constitutional tort for excessive corporal punishment." Garcia, 817 F.2d at 658. We noted "that at some point of excessiveness or brutality, a public school child's substantive due process rights are violated by beatings administered by government paid school officials." Id. at 655.

A similar result was reached in Gerks v. Deathe, 832 F. Supp. 1450 (W.D. Okla. 1993), another school discipline case. In Gerks, a classroom teacher persuaded a mentally handicapped student with the mental abilities of a four-year-

old and a documented fear of bathrooms to go to the bathroom before classes started. See id. at 1451. The teacher subsequently learned that the student had left three piles of excrement on the bathroom floor. The teacher tried to get the student to clean up her mess. But, when the student did not make enough progress, the teacher told the student she would have to stay in the bathroom alone until the mess was cleaned up. The teacher used a ribbon to fasten the bathroom door to prevent the student from leaving. Only after the mess was mostly cleaned up did the teacher attempt to clean the student and give her clean clothes. The school principal, aware of the teacher's actions, later showed the student a paddle "to let her know what happened when children did not obey school rules." Id. at 1452. The principal wrote up a disciplinary report about the student's behavior. The incident lasted almost three hours.

In Gerks, the district court found the teacher's behavior was sufficient to state a substantive due process claim. The student had a documented fear of bathrooms, particularly of being left alone in the bathroom, which was well known to the teacher. Additionally, the student, whose mental handicap affected her ability to understand the teacher's actions, may have been left alone in the bathroom for two hours. Id. at 1454. The district court concluded "that a rational jury could find that [the teacher's] actions were so demeaning and harmful to [the student] that they might have violated her substantive due process rights." Id.

-7-

Ricky claims that Ms. Robinson's conduct "was so excessive, demeaning, and inhumane as to be a substantive violation of his Fourteenth Amendment Due Process rights." Aplt. Br. at 13. However, Ricky's injuries do not rise to the same conscience shocking level as the plaintiffs in Garcia and Gerks. Ms. Robinson's actions were not so excessively cruel that Ricky was subjected to "appreciable pain." Additionally, Ms. Robinson's actions were not "inspired by malice or sadism." At most, Ms. Robinson exercised poor judgment and was careless in having Ricky clean out the toilet without first inspecting it herself and in failing to provide Ricky with appropriate tools or gloves. It is uncontroverted that Ms. Robinson believed that Ricky had clogged a clean toilet with paper. As the district court correctly found, "Robinson may have been negligent in not confirming her understanding of Ricky's 'confession,' but her conduct falls far short of the deliberate and malicious conscience shocking conduct described in Garcia and Gerks." Order at 10.

Even if Ricky had a substantive due process claim, Ms. Robinson would still be entitled to qualified immunity. In determining claims of qualified immunity, we first determine whether "the defendant's actions violated a constitutional or statutory right." Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995). Second, we determine whether the right was so clearly established that a reasonable person would have known that her conduct violated

that right.  Id. at 1534-35.  We have stated that "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  There are no Supreme Court or Tenth Circuit opinions on point, nor does the clearly established weight of authority from other courts indicate that similar facts to our case establish a substantive due process violation.  As discussed above, Ricky admitted confessing to Ms. Robinson, albeit mistakenly, to clogging a clean toilet with paper.  Ms. Robinson reasonably believed that the paper and toilet were clean.  At most, Ms. Robinson was negligent in not checking for herself before having Ricky clean the toilet.  Ms. Robinson is entitled to qualified immunity because she did not violate a clearly established law of which a reasonable teacher should have known.

The dismissal of the case against Wister School District is affirmed.  There is no evidence that Ms. Robinson's actions were consistent with an official policy or custom of the Wister School District.  See Monell v. Department of Soc. Serv. of the City of New York, 436 U.S. 658, 690-91, 694 (1978) (section 1983 municipal liability is imposed when the deprivation is the result of a "government[al] policy or custom").  Furthermore, Ms. Robinson was given a formal, written admonishment concerning her actions after the principal and

superintendent learned of her actions.  She was also warned that additional incidents of this nature could lead to her dismissal.

For the foregoing reasons, the decision of the district court is AFFIRMED.